APPEAL OF UNITED MINE WORKERS OF AMERICA.

(Nos. 83AP-309, -310 and -381—
Decided February 7, 1984.)

*Messrs. Smith & Schnacke, Mr. David W. T. Carroll* and *Mr. Jerry F. Palmer,* for appellant Consolidation Coal Company.

*Messrs. Alexander, Ebinger, Fisher, McAlister & Lawrence, Mr. Alvin J. McKenna, Mr. David A. Laing, Ms. Diane C. Reichwein* and *Mr. David M. Cohen,* for appellant Southern Ohio Coal Company.

*Mr. Thomas M. Myers,* for appellee United Mine Workers of America.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. John E. Breen,* for appellee Mine Examining Board.

WHITESIDE, P.J. In these consolidated appeals, appellants Consolidation Coal Company (hereinafter "Consolidation") and Southern Ohio Coal Company (hereinafter "Southern") appeal from a judgment of the Franklin County Court of Common Pleas affirming decisions of the Mine Examining Board relative to mines operated by appellants.

Southern operates a mine known as "Meigs No. 1 Mine," with respect to which a deputy mine inspector, on February 25, 1982, made a finding that a certain condition or practice in the mine created a hazard, namely, the procedure utilized when an elevator affording the primary exit means for the workers in the mine becomes unavailable "in case of an emergency or injury." The deputy inspector recommended, *inter alia,* that, if it is obvious that the elevator will not be operable for a period exceeding eight hours, the workers must immediately be withdrawn from the mine. This recommendation was concurred in by the Chief of the Ohio Division of Mines on March 2, 1982. Both Southern and appellee Rodney Butcher, Chairman of the Mine, Health and Safety Committee of Meigs No. 1 Mine, appealed to the Mine Examining Board.

During the pendency of that appeal, the deputy inspector, on April 5, 1982, issued a modified recommendation that, under the circumstances, where an elevator is not working, workers may finish the shift in which the elevator becomes inoperable, but the next shift will not be sent into the mine until the elevator is operating. This recommendation was concurred in by the Chief of the Ohio Division of Mines on April 8, 1982. No new notice of appeal was filed by either party. Thereafter, the Mine Examining Board scheduled the initial appeal for hearing; and, thereupon, Southern filed a notice that it was dismissing its appeal. The scheduled appeal, however, proceeded upon the appeal on behalf of the mine workers. The Mine Examining Board rendered a decision that, if an elevator becomes inoperable, leaving only one opening for ingress and egress of workers

from the mine, the persons employed in the mine shall be withdrawn if the elevator is not repaired and again operable within forty-five minutes. Southern appealed to the court of common pleas, which affirmed the decision, resulting in this appeal, upon which Southern raises seven assignments of error, as follows:

"I. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because the board's decision is not in accordance with law inasmuch as the board lacked jurisdiction to render a decision due to the failure of the appellee, United Mine Workers of America, to perfect a proper appeal.

"II. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because that board exceeded its statutory authority by engaging in statutory construction and interpretation.

"III. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because that board exceeded its statutory grant of authority by usurping the power and duties of the chief of the Ohio Division of Mines and his deputy mine inspectors.

"IV. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because the board's rule, contained in that decision, which requires the evacuation of miners following a thirty to forty-five minute 'trouble-shooting period' was not adopted in compliance with Ohio's Administrative Procedure Act and is, therefore, invalid.

"V. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because the board's decision is arbitrary, unreasonable, and based on the board's incorrect interpretation of Ohio Revised Code, sections 4153.14, 4153.18, and 4157.48.

"VI. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because that decision is arbitrary, unreasonable, contrary to law, and not supported by reliable, probative and substantial evidence inasmuch as the decision conflicts with established Ohio Division of Mines' policy and interpretation and with Federal Mine law and interpretations thereunder.

"VII. The court of common pleas committed prejudicial error in affirming the June 11, 1982 decision of the Ohio Mine Examining Board because that decision is arbitrary, unreasonable, contrary to law, and not supported by reliable, probative, and substantial evidence inasmuch as the uncontradicted evidence before the board demonstrated that longstanding Ohio law reflected in the April 8, 1982 findings of the chief of the Ohio Division of Mines adequately provided for miner safety in the event of an elevator malfunction."

With respect to Consolidation's Oak Park No. 7 Mine, the Acting Chief of the Division of Mines on March 1, 1982 made a recommendation concerning ways and means of egress to the mine, which were requested to be reduced to writing. A written finding was made by the Chief of the Division of Mines on March 18, 1982, from which the United Mine Workers of America's Safety Coordinator filed a letter which was received on March 25, 1982, appealing to the Mine Examining Board. The Mine Examining Board consolidated this appeal concerning Consolidation's Oak Park No. 7 Mine with that of the Southern's Meigs No. 1 Mine and rendered a joint decision, as set forth above. Consolidation appealed to the court of common pleas, which consolidated the two appeals and affirmed the decision of the Mine Examining Board, resulting in this appeal by Consolidation, which raises five assignments of error, as follows:

"A. The court erred when it failed to find that the Mine Examining Board

lacked jurisdiction to hold the May 12, 1982, hearing and to issue the June 11, 1982 decision affecting Consolidation Coal Company's Oak Park No. 7 Mine, R.C. § 4153.13 not having been followed.

"B. The court erred when it failed to find that the Mine Examining Board lacked jurisdiction to issue a declaratory legal interpretation of the application of R.C. §§ 4153.14 and 4157.48.

"C. The court erred when it found that the Mine Examining Board correctly interpreted R.C. § 4157.48 which applies specifically to appliance malfunctions.

"D. The court erred when it found that the Mine Examining Board's June 11, 1982 decision does not conflict with the Federal Coal Mine Health and Safety Act and regulations as interpreted.

"E. The court erred when it permitted the Mine Examining Board to participate as a party in the appeal as a matter of right."

The gist of Southern's first assignment of error is that the Mine Examining Board lacked jurisdiction because no appeal was taken from the April 8, 1982 findings of the chief. Without determining the question of jurisdiction of the chief to change or modify his action during the pendency of an appeal therefrom to the Mine Examining Board; we find that the board had jurisdiction predicated upon the appeal from the March 2, 1982 findings. R.C. 4153.13 expressly grants a right of appeal to "* * * the authorized representative of the workers of such mine * * *" within ten days. Although the appeals were not received until March 15, 1982, this was a Monday and, thus, the appeals were timely made since the letter dated March 2, 1982 could not have been received prior to the next day. Since the appeal was properly before the board with respect to the March 2, 1982 action, the board had jurisdiction to proceed. Southern's Assignment of Error I is not well-taken.

Consolidation's Assignment of Error "A" likewise raises a jurisdictional issue.

We find no merit to this contention. A timely appeal was taken on behalf of the workers at the mine. Consolidation, however, contends that there were no findings of the Chief of the Division of Mines to appeal from. The "findings" were contained in a letter to the safety coordinator for the United Mine Workers of America. Consolidation contends that it never received a copy of this letter. However, we note that, before the Mine Examining Board, Consolidation did not seek to have the appeal dismissed but, instead, sought affirmance of the interpretation of the applicable statutes made by the Chief of the Division of Mines. While the matter did not originate with a deputy mine inspector under the express procedure set forth in R.C. 4153.13, there was a finding made by the chief predicated upon a prior finding; however, it is not clear that a copy was mailed to the operator of the mine or posted upon the bulletin board as required by R.C. 4153.13. Inasmuch as these issues were not raised at the administrative level, they may not be raised upon appeal since they are not jurisdictional, but are issues of proper procedure. A finding was made, even if procedurally erroneous, and an appeal taken. Procedural error of this nature would not be jurisdictional, even if it might entitle Consolidation to a new determination by the chief, if the issue were properly raised at the administrative level. However, a full hearing was held before the Mine Examining Board. Accordingly, Consolidation's Assignment of Error "A" is not well-taken.

Southern's Assignment of Error II and Consolidation's Assignment of Error "B" raise the issue of whether the Mine Examining Board exceeded its jurisdiction in interpreting applicable statutes. R.C. 4153.13 provides that the appeal to the board is "* * * for a review and redetermination of the finding of the chief in such matter. * * *" Necessarily, when the findings involved application of a statute, there must be an administrative

interpretation of the statute. The Mine Examining Board is fully authorized and empowered to make such an administrative interpretation of the statutes. There is no merit to these assignments of error, and neither is well-taken.

Consolidation's Assignment of Error "C" and Southern's Assignments of Error III, IV and V will be considered together since they raise a single issue, which is controlled by the clear and express language of R.C. 4153.14 which provides that:

"Except as provided in this section, the operator of an underground coal mine shall not employ, or permit any person to work therein, unless there are at least two openings to every seam worked in such mine, separated by natural strata of not less than one hundred feet in breadth at any point, by which distinct means of ingress and egress are always available to the persons therein employed. Such openings need not belong to the same mine so long as the persons employed therein have safe, ready, and available means of ingress and egress, by not less than two openings; provided that no air shaft with a ventilating furnace at the bottom shall be designated or used as a means of ingress or egress. This section does not apply to:

"(A) Opening a new mine; * * *

"(B) A mine in which the second opening has become unavailable for any reason, so long as not more than twenty persons are employed therein at any one time and are engaged in the process of restoring the second opening or developing a new opening;

"(C) A mine in which the second opening has become unavailable by reason of the final robbing of the pillars previous to abandonment, * * *.

"No operator of a mine shall refuse or neglect to comply with this section."

The clear and unambiguous language of this section is that no worker shall be permitted to work in the mine unless there are available two openings for ingress and egress. The exceptions are opening of the mine, closing of the mine and the unavailability of the second opening for any reason. Under any of these circumstances, no more than twenty persons shall be employed in the mine at any one time. When the second opening has become unavailable, those twenty persons must be engaged in the process of restoring the second opening or developing a new one. This section does not permit an eight-hour delay, as contemplated by the chief's March 2, 1982 finding, or a delay to the end of a shift, as contemplated by the April finding. Literal compliance with this section would require immediate evacuation of all miners, except twenty working on restoring the second opening as soon as the second opening becomes unavailable regardless of the reason therefor. The order of the Mine Examining Board permits a forty-five minute delay before commencing such evacuation, so that a short, temporary cessation of availability of a second opening will not substantially disrupt work. There is nothing unreasonable or prejudicial to the mine operators by this provision, which gives them reasonable relief from the literal statutory provisions.

Southern and Consolidation contend that R.C. 4157.48 excuses their compliance with the clear and unambiguous provisions of R.C. 4153.14 when an elevator becomes inoperable. R.C. 4157.48 provides that:

"The operator of a mine shall provide and maintain safe appliances, approved by the deputy mine inspector, for the ingress and egress of persons in each shaft, designated by such owner, * * * as a means of ingress and egress for persons employed therein. When there is but one shaft available for ingress and egress from any unavoidable cause, the appliances therein shall be kept available at all times to persons employed in such mine. When such appliances in any shaft are rendered unavailable, the same shall be restored without delay.

"No operator of a mine shall refuse or neglect to comply with this section."

In referring to this section, the Mine Examining Board stated in part:

"* * * The board finds that this language does not change the two openings required by section 4153.14, but emphasizes that safe appliances be maintained by the operator for those twenty persons described in the exception provided in paragraphs A, B, and C of section 4153.14. It is the opinion of the board that this section also must be read in conjunction with Ohio Revised Code 4153.14 and 4153.18, not instead of. * * *"

We agree with the board's interpretation. The sections must be read *in pari materia*. There is nothing in R.C. 4157.48 which excuses a mine operator from complying with R.C. 4153.14. R.C. 4153.14 deals with the number of openings to the surface which must be maintained; whereas, R.C. 4157.48 deals with the appliances that should be provided to the workers for transportation while using those means of ingress and egress provided in compliance with R.C. 4153.14. An elevator is only one type of appliance.

Thus, the findings of the chief in both instances were inconsistent with the clear statutory mandate of R.C. 4153.14 and 4157.48. The chief had no authority to change the statutory requirement, and, in any event, purported to act by findings, rather than rule.

Although both appellants have contended that the Mine Examining Board in effect adopted a rule with respect to the forty-five minute trouble-shooting period, we find no merit to that contention. Rather, the board expressly stated:

"* * * most all problems causing the elevator to mal-function could be remedied in a short time. All parties testifying at the hearing recognized the need for a trouble shooting period of thirty to forty-five minutes, * * * before withdrawing the person employed in the mine."

Therefore, Consolidation's Assignment of Error "C" and Southern's Assignments of Error III, IV and V are not well-taken.

Southern's Assignment of Error VI and Consolidation's Assignment of Error "D" raise an issue of conflict with the Federal Coal Mine Health and Safety Act (Section 801 *et seq.,* Title 30, U.S. Code). We find no merit to this contention. At most, Southern's contention is that Ohio law provides greater protection for the safety of mine workers than does federal law. Federal statutes do not preclude a state's requiring greater safety protection for mine workers than that required under federal law. In any event, we shall not assume that a state statute is invalid because it provides greater protection for the safety of workers than does a federal statute, in the absence of a clear showing that the federal statute not only is applicable but also prohibits enactment of a state statute affording greater protection for the safety of workers than does the federal law. Nor have appellants demonstrated any direct conflict between R.C. 4153.14 and any federal statute. Consolidation's Assignment of Error "D" and Southern's Assignment of Error VI are not well-taken.

By its seventh assignment of error, Southern contends that the evidence indicates that the April 8, 1982 findings of the Chief of the Ohio Division of Mines adequately provides for miners' safety. The obvious purpose of the two-opening requirement is that, if one becomes unavailable for egress, the other remains available. Where one of the two available openings becomes unavailable because of the malfunctioning of an elevator, only one opening for egress is left. If that opening becomes unavailable, there is none. Only if the two-opening requirement of R.C. 4153.14 is unreasonable and unnecessary can there be any merit to Southern's contention "that there is no danger or threat to the miners in the situation of an elevator being down for

repairs," which is not resolved by the findings of the chief. To permit this situation to remain for a period which may be as long as a full shift, presumably nearly eight hours, is inconsistent with the express provisions of R.C. 4153.14, even when read in conjunction with R.C. 4157.48. Nor does R.C. 4153.18 vary the result, inasmuch as it deals with an entirely different, although related, subject, namely, separate and distinct traveling ways from the interior workings of the mine, which in turn must be available to at least one opening to the surface. Southern's Assignment of Error VII is not well-taken.

By Assignment of Error "E," Consolidation contends that the trial court erred in permitting the Mine Examining Board to participate in the proceedings. Even assuming there to be error and the Mine Examining Board not to be a party to the appeal, we find no prejudice. The court of common pleas correctly affirmed the decision of the Mine Examining Board. It was incumbent upon Consolidation as appellant to demonstrate that that decision was either unsupported by reliable, probative and substantial evidence, or was unreasonable or unlawful. For the reasons stated above, the decision of the Mine Examining Board is mandated by the statutory requirements, and no prejudice to Consolidation or Southern has been demonstrated by allowing a forty-five minute trouble-shooting period, which is not provided for by statute. Assignment of Error "E" is not well-taken.

For the foregoing reasons, all of the assignments of error of both appellants are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and NORRIS, JJ., concur.